**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:19-cr-40 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| DAMIAN L. JACKSON, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S THIRD MOTION TO
MODIFY SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (DOC. 48)**

---

This case is before the Court on the "Third Motion to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. 48) (the "Motion"), filed by Damian L. Jackson ("Jackson"). The United States (the "Government") filed a Response to the Motion (Doc. 52) (the "Response"), in which the Government opposes the Motion and asks the Court to deny it. Jackson filed a Reply to the Response (Doc. 54) (the "Reply"). Jackson, through counsel, asks this Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ordering that he be released from confinement. As indicated by the title of the Motion, Jackson previously filed two other motions to modify his sentence, both of which this Court denied.[1] (Docs. 44, 47.) The matter is ripe for review.[2]

---

[1] The Court denied Jackson's first motion (Doc. 35) for failure to fulfill the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. 44.) The Court denied Jackson's second motion for lack of authority to grant Jackson's request simply to change the place where he is confined. (*See* Doc. 47.)

[2] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified Section 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub. L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must full exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison") (internal quotation marks omitted) (alteration adopted); *United States v. Hardin*, No. 19-cr-240, 2020 U.S.

For the reasons discussed below, the Court **DENIES** Jackson's Motion.

I.     **BACKGROUND**

The Government filed an Information on March 4, 2019, charging Jackson with violating 18 U.S.C. § 922(g)(1).  (Doc. 13.)  On April 12, 2019, Jackson pled guilty to the charge.  (Doc. 16.)  The Amended Statement of Facts, signed by Jackson and his attorney, states:

> On or about March 29, 2018, Defendant DAMIAN L. JACKSON, in the Southern District of Ohio, possessed a firearm after having been previously convicted of a felony offense.
>
> On or about March 29, 2018, law enforcement executed a search warrant at 625 Rockford Avenue in Dayton, which lies in the Southern District of Ohio.  Law enforcement found a Norinco MAK90 caliber 7.62x39mm rifle with an attached large capacity magazine (one capable of containing more than 15 rounds of ammunition) as well as a Smith & Wesson 9mm firearm, both of which were possessed by Defendant.
>
> Prior to March 29, 2018, Defendant had been previously convicted of a felony offense punishable by greater than one year imprisonment, namely on or about August 9, 1995, in the Court of Common Pleas, Montgomery County, Ohio, Case Number 95-CR-1429, of 'Involuntary Manslaughter.'  At the time Defendant possessed the firearms, he knew his prior conviction was punishable by greater than one year imprisonment. …

(Doc. 28.)  The Final Presentence Report provided additional information regarding the 1995 conviction, namely that, on May 1, 1995, Jackson used a firearm that killed another person and, at that time, (according to police reports) Jackson was involved in a drug sale that went wrong when he shot the victim, leading to the victim's death.  (Final Presentence Report, at ¶ 43.)  The Final Presentence Report also identified three juvenile adjudications, 15 adult criminal convictions (in

---

Dist. LEXIS 90855, at *2-4, 2020 WL 2610736 (N.D. Ohio May 22, 2020) (analyzing whether 30-day lapse provision in 18 U.S.C. § 3582(c)(1)(A) only applies if the warden does not respond to the defendant's request for the BOP to bring such a motion on the defendant's behalf, and finding that the provision is not limited to only applying in such a situation).  The Government does not argue that Jackson has failed to fulfill the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A).  (*See* Doc. 52.)  Additionally, Jackson previously attached to his second motion a letter from the Bureau of Prisons ("BOP"), dated May 11, 2020, denying his request for compassionate release that Jackson allegedly made to the warden on April 1, 2020.  (*See* Docs. 45, 45-1.)  The letter states that Jackson does not meet the criteria for a compassionate release/reduction in sentence.  (Doc. 45-1 at PAGEID # 420.)

addition to the conviction for involuntary manslaughter), and seven other minor convictions.  (*Id.* at ¶¶ 39-65.)

On November 21, 2019, the Court imposed a sentence of twelve months and one day; three years of supervised release with special conditions; a $100 special assessment; and, forfeiture of property.  (*See* Docs. 29, 30.)  Jackson acknowledges that "[t]his Court treated him favorably" in its sentencing, with a variance from the sentencing guidelines.  (Doc. 54 at PAGEID # 465.)

It is undisputed that Jackson had a major heart attack on February 2, 2020 and has other medical conditions.  (*See, e.g.,* Docs. 48, 52.)  He is housed at Federal Correctional Institution (FCI) Elkton.  (*Id.*)  On June 22, 2020, Jackson tested positive for COVID-19.  (*See* Doc. 54-2 at PAGERID # 472-73.)  On July 6, 2020, he tested negative for COVID-19.  (*See* Doc. 54-2 at PAGEID # 469-70.)  It is the Court's understanding that he remains in quarantine at FCI Elkton. (Doc. 54 at PAGEID # 464.)  Jackson is due to be released in January of 2021.  (Doc. 54 at PAGEID # 465.)  He is 43 years old.  (Final Presentence Report.)

In its Response, and in accordance with the Court's instructions (Doc. 49), the Government states that the BOP has issued eight "Action Plans" governing COVID-19 procedures at its institutions.  (Doc. 52 at PAGEID # 445.)  The Government believes that a summary of the plan applicable to Jackson is that a prisoner who tests positive for COVID-19 is then placed in isolation and cannot be released unless he satisfies CDC "test-based strategy" criteria, which includes two negative tests taken at least 24-hours apart.  (*Id.*; Doc. 52-1; Doc. 52-2.)  Therefore, it does not appear at this time that Jackson has completed the BOP's procedures for prisoners who test positive for COVID-19.  The Response also notes that, prior to his positive COVID-19 test, the BOP found that Jackson's health conditions did not warrant an early release.  (Doc. 52 at PAGEID # 445-46; Doc. 45-1.)

## II. ANALYSIS

Jackson now asks to be "immediately" released from custody based on allegedly extraordinary and compelling reasons, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. 48.)

### A. Legal Standards

A district court has limited authority to modify a sentence.  "Generally speaking, once a court has imposed a sentence, it does not have authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013).  Section 3582(c)(1)(A) grants such authority in certain limited circumstances.[3]  It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).  Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020).

---

[3] For a defendant to bring a motion under that section on his own behalf, he must first fulfill the statute's administrative exhaustion requirement before filing his motion with the court.  18 U.S.C. § 3582(c)(1)(A) ("…upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…"); *Alam*, 960 F.3d at 831-33.

4

Commentary to an applicable policy statement issued by the Sentencing Commission[4] identifies four, relatively narrow, circumstances in which "extraordinary and compelling reasons" may exist. United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n. 1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reason. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n. 3.

That same applicable policy statement also requires that the defendant not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188. Section 3142(g) provides factors to be considered.[5]

---

[4] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

[5] Specifically, 18 U.S.C. § 3142(g) states:
"(g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required."

"[C]ompassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment).

### B. Application

In his Motion, Jackson asserts that the Court should grant his Motion and have him released from custody because he is in grave danger. He explains that he is a high-risk individual who has now tested positive for COVID-19. He argues that he needs to be able to obtain the best possible medical care, that he needs to be at home with his family at this time, and that his family is suffering because his long-term significant other is now a single mother who supports their two young children with food stamps. He also argues that, through his post-offense rehabilitation, he has demonstrated that he is a productive, non-threatening member of the community.

In response, "the Government acknowledges that Jackson has a condition(s) identified by the CDC that elevates his risk, and that this could constitute an extraordinary and compelling reason in conjunction with COVID-19." (Doc. 52 at PAGEID # 445.) The Government argues that, despite its acknowledgment, the Motion should be denied because Jackson is a danger to the safety of other persons or to the community. The Government also argues that allowing Jackson's release would not be appropriate in light of the Section 3553 sentencing factors. It asserts that "the nature and circumstances" of Jackson's crime, as well as his "history and characteristics," raise public safety concerns. The Government also points out that Jackson has only served about half of his prison sentence.

Although the Government does not concede that Jackson has shown that an "extraordinary and compelling" reason warrants a reduction in the term of his imprisonment, the Court will assume—without deciding—that he has satisfied that requirement. However, as shown above, that does not end the Court's inquiry. Jackson argues that "the imposed sentence of 12 months

6

and 1 day (a modest sentence compared to the guidelines) already reflects a determination that Mr. Jackson does not pose a danger so great to the community" that he should serve out the remainder of his sentence at FCI Elkton, where there has been an outbreak of the COVID-19 virus.  (Doc. 54 at PAGEID # 463.)  While the Court agrees that it showed leniency in his sentencing given that the sentence imposed was modest compared to the guidelines, the Court does not agree that Jackson, therefore, does not pose "a danger to the safety of any other person or to the community." U.S.S.C., Guidelines Manual, § 1B1.13(2).

Jackson pled guilty to an offense involving a firearm, and he has a significant criminal history (Doc. 28; Final Presentence Report at ¶¶ 39-65).  *Kincaid*, 802 F. App'x at 188-89 (affirming district court's order denying motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)); *United States v. Westine*, No. 20-5233, 2020 U.S. App. LEXIS 21418, at *3-4 (6th Cir. July 9, 2020) ("district courts may consider the nature and circumstances of the offense … in addition to [the defendant's] age and health conditions").  That criminal history includes, among other things, conviction for a violent crime:  "Involuntary Manslaughter," where he used a firearm to kill another person.  (*Id.*)  The offense for which the Court sentenced Jackson likewise involved firearms, namely a large-capacity rifle and a pistol.  (*Id.*)  And, this is the second conviction for possessing a firearm under disability, as Jackson was convicted in 2005 of violating Ohio's counterpart statute.  (*Id.* at ¶ 45.)  Thus, despite Jackson's arguments and submissions, this Court does <u>not</u> "determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.C., Guidelines Manual, § 1B1.13.  Instead, given the circumstances, it finds that he is such a danger.[6]

---

[6] The Court also notes that "immediately" releasing Jackson from FIC Elkton, as he requests, would pose an additional danger to the community given that it appears he has not yet completed the applicable BOP procedures for inmates who have tested positive for COVID-19, which is a contagious respiratory illness caused by a virus.

7

As part of its analysis, the Court also has considered the Section 3553(a) factors to the extent that they are applicable. A number of the applicable factors weigh against granting the Motion. For example, the Court finds that "the nature and circumstances of the offense and the history and characteristics of the defendant" does not favor an early release for Jackson for reasons set forth above. 18 U.S.C. § 3553(a)(1). As another example, the Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor an early release for Jackson for the reasons set forth above. 18 U.S.C. § 3553(a)(2)(A)-(C). Jackson has only served approximately half of the prison time to which he was sentenced—a sentence in which Jackson concedes the Court treated him favorably. *Kincaid*, 802 F. App'x at 188 ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing Jackson after serving the relatively short period of time "minimizes both the impact of [his] crime and seriousness of the offense." *Chambliss*, 948 F.3d at 694. Instead, "requiring [him] to serve the remainder of his sentence would provide just punishment for the offense and afford adequate deterrence to criminal conduct." *Id.* (internal quotation marks omitted); *see also* 18 U.S.C. § 3553(a). This is particularly true given Jackson's prior criminal history. The Court finds that the other Section 3553(a) factors are either inapplicable or do not outweigh these considerations.[7]

---

[7] This includes, but is not limited to, consideration of the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

In summary, in addition to the Court's finding that Jackson is a danger to the community, the Court finds that analyzing and balancing the applicable Section 3553(a) factors further supports denial of the Motion. *United States v. Pawlowski*, No. 20-2033, 2020 U.S. App. LEXIS 20015, at *4-5, 2020 WL 3483740 (3d Cir. 2020) (affirming denial of compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—particularly, the need for a sentence that promotes respect for the law, provides deterrence, and reflects the seriousness of the offense—counsel against compassionate release"); *United States v. Robinson*, No. 5:18CR627, 2020 U.S. Dist. LEXIS 86501, 2020 WL 2519663 (N.D. Ohio May 18, 2020) (inmate at FIC Elkton denied compassionate release, despite his crime being nonviolent, where the court found that the nature and circumstances of his actions demonstrated a danger to the community). While the Court is sympathetic to Jackson's situation, the Court finds that the danger he poses to the community, as well as the 18 U.S.C. § 3553(a) sentencing factors, counsel against granting him a compassionate release.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** the "Third Motion to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. 48).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, July 27, 2020.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE